1  Mark-Robert Bluemel, Esq. (SBN 158684)
2  8100 La Mesa Blvd., Suite 200
   La Mesa, California 91942
   Telephone: (619) 440-4444
3  Email: mbluemel@mcdougallawfirm.com

4  Mark-Robert Bluemel, Plaintiff In Pro Per

5

6

7

8               UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10 MARK-ROBERT BLUEMEL                Case No.: **'25CV2708 RBM BJW**

11               Plaintiff,

12 v.                                 **COMPLAINT FOR DAMAGES
                                      AND INJUNCTIVE RELIEF**
13 IMAGE COMICS, INC., a California
   Corporation; BRIAN POSEHN, an        1. **FEDERAL TRADEMARK
14 individual; RICK REMENDER, an           INFRINGEMENT(15 U.S.C. §
   individual; BRETT PARSON, an            1114);**
15 individual; MORENO DINISHIO, an     2. **FALSE DESIGNATION OF
   individual;                            ORIGIN (15 U.S.C. § 1125(A));**
16                                      3. **CALIFORNIA UNFAIR
   and DOES 1–15, inclusive,              COMPETITION LAW(BUS. &
17                                        PROF. CODE § 17200);**
                 Defendants.           4. **COMMON LAW TRADEMARK
18                                        INFRINGEMENT AND UNFAIR
                                          COMPETITION;**
19                                     5. **ABUSE OF PROCESS;**
                                       6. **FRAUD (INTENTIONAL
20                                        MISREPRESENTATION)**
                                       7. **INJUNCTIVE RELIEF;**
21
                                      **JURY TRIAL DEMANDED**
22

23

24

25

26

27

28
                                      1

## COMPLAINT

Plaintiff Mark-Robert Bluemel ("Plaintiff"), appearing In Pro Per, hereby sets forth this Complaint for Damages and Injunctive Relief against Defendants Image Comics, Inc. ("Image Comics"), Brian Posehn ("Posehn"), Rick Remender ("Remender"), Brett Parson ("Parson"), and Moreno Dinishio ("Dinishio") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

This Complaint arises from Defendants' deliberate and coordinated campaign to infringe, dilute, and destroy the value of Plaintiff's federally registered trademark THE GROMMETS, U.S. Reg. No. 3,510,923. Plaintiff's mark has been in continuous use since 2007, associated with a literary series promoting youth, surfing culture, and positive values. Defendants are well-known figures in the comic book industry intentionally appropriated the identical title "Grommets" for their own adult-themed comic book, filled with violence, profanity and drug use.

Despite receiving formal cease-and-desist correspondence on July 11, 2025 (Exhibit 38) and a detailed 30-day demand under California Business & Professions Code § 17200 dated August 20, 2025 (Exhibit 39.) Defendants persisted in their unlawful conduct. They compounded their wrongdoing by filing a fraudulent declaratory judgment action in the Western District of Washington, a forum wholly disconnected from the parties or dispute. As evidenced in counsel's letter of October 2, 2025, and Plaintiff's declaration dated September 12, 2025, attached hereto as Exhibit 1 and 2, respectively.

Plaintiff Mark-Robert Bluemel ("Plaintiff") is the owner of the incontestable federal trademark THE GROMMETS, U.S. Reg. No. 3,510,923, first used in commerce in 2007 and registered in 2008, in International Classification 016 for use in conjunction with "Printed matter, namely, book series featuring mystery stories" (The Registration). The mark is associated with

Plaintiff's literary book series "The Grommets" celebrating the innocence of youth, the love of surfing and the ocean, and encouraging children to read.

Defendants Image Comics, LLC, Brian Posehn, Rick Remender, Brett Parson, and Moreno Dinishio (collectively "Defendants") have launched a comic book series titled "Grommets," which misappropriates Plaintiff's incontestable mark. Unlike Plaintiff's wholesome series, Defendants' publication is based on their personal experiences in middle school and is rife with profanity, violence, and drug use. Their works starkly contrast with the wholesome themes of Plaintiff's series and tarnish the reputation and undermine the goodwill of Plaintiff's mark. Defendants' infringement is willful, unlawful, and fraudulent, and has caused irreparable harm to Plaintiff's brand and reputation.

Defendants further escalated their misconduct by filing a declaratory judgment action in the Western District of Washington, a forum with no legitimate connection to the parties or dispute. This improper forum shopping was based on a false allegation of privity with an Amazon contract and was designed to harass Plaintiff, increase litigation costs, and coerce default.

## JURISDICTION AND VENUE

1.      Plaintiff brings this action for trademark infringement and unfair competition arising under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and for unfair business practices under California Business and Professions Code § 17200 et seq.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the laws of the United States relating to trademarks and unfair competition.

3.      This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

4.     This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

5.     This Court may exercise personal jurisdiction over Defendants. Defendant Image Comics, Inc., is incorporated under the laws of the State of California with its principal place of business located in the State of Oregon and Defendants Brian Posehn, Rick Remender, Brett Parson, and Moreno Dinishio are individuals informed and believed to be domiciled in the State of California.

6.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this district and the defendants reside or conduct business here.

## **PARTIES**

7.     Plaintiff MARK-ROBERT BLUEMEL is a California resident domiciled in San Diego County since 1989. He is the creator and owner of THE GROMMETS literary series and the registered owner of the incontestable federal trademark THE GROMMETS, U.S. Reg. No. 3,510,923 ("the Registration").  A copy of the Registration is attached hereto as Exhibit 3.

8.      Defendant IMAGE COMICS, INC., is a California Corporation with a principal address at 3306 SE 78th Avenue, Portland, OR 97206, and its Agent for Service of Process located at: 600 Anton Boulevard, Suite 900, Costa Mesa, CA 92626.

9.     The authors of the infringing work BRIAN POSEHN, RICK REMENDER, BRETT PARSON, and MORENO DINISHI are individuals informed and believed to be domiciled in California.

10.     Defendants are individuals and entities engaged in the creation, publication, and nationwide distribution of comic books and related media, including the infringing series "Grommets." Together, they form an association-in-fact enterprise under 18 U.S.C. § 1961(4).

4

11.     Defendants DOES 1-15's true name and capacity, whether individual, corporate, associate, or otherwise are unknown to Plaintiff at this time and Plaintiff therefore sues Defendants DOES 1-15 under such fictitious names. When the true name, capacity, and activities of Defendants DOES 1-15 are ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1-15 are responsible in some manner for the events and happenings referred to herein, and that Plaintiff's damages alleged herein were proximately caused by Defendants DOES 1-15.

## FACTUAL ALLEGATIONS

12.     Plaintiff, an avid surfer, conceived the idea for THE GROMMETS series out of a love of surfing and the ocean, coupled with an acknowledgment of the innocence of youth. The books are written to encourage young people to read through positive and imaginative mystery stories. The works are entirely fictional. From inception, THE GROMMETS was always intended to be a continuing series. (Please see Exhibit 4.)

13.     Historically, surfers have been viewed by society as derelicts or individuals on the fringes of respectability. Only in more recent years, with the growing popularity and recognition of surfing as an athletic and cultural pursuit, has this negative perception begun to diminish. After graduating from law school in the early 1990s, Plaintiff conceived the concept of The Grommets, a series centered on three young surfers who solve mysteries in the tradition of works such as Alfred Hitchcock's The Three Investigators. The purpose of the Surfing Mystery Series is to demonstrate that surfers are not the dregs of society, to educate readers about and promote the sport of surfing, and to encourage children who have an interest in surfing to develop an appreciation for reading.

14.     The first book, The Grommets: The Secret of Turtle Cave, was published in 2007 (Exhibit 5.) In that book a seemingly perfect summer of surfing, snorkeling, and skateboarding transforms into a season of daring adventure and discovery for the three young main characters

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

after they rescue an elderly woman swimmer from drowning. Thereafter, Buzz, Oz, and Jimbo (Exhibit 6) are granted permission to use "The Shack," a small structure located in her backyard near the beach, as their clubhouse. Their action-filled summer begins when they discover a treasure chest on the ocean floor (Exhibit 7.) On the inside lid of the chest is an etching (Exhibit 8) that leads them into the perilous tides and treacherous passageways of Turtle Cave (Exhibit 9), where they encounter a massive wooden barrier that may conceal a hidden treasure (Exhibit 10). As the boys move from riding waves to navigating the dark and narrow tunnels of the cave, they test their courage against the forces of nature and the expectations of their parents and community, ultimately reaffirming their commitment to 'The Grommets' code of integrity.

15.     In Exhibit 11, attached hereto, the elderly woman whom the boys rescue presents the main character with a key to their new clubhouse by the beach, symbolizing trust and the beginning of their adventures.

16.     In contrast, Exhibit 12, taken from the infringing work, depicts a man driving with a cigarette in his mouth accompanied by two boys in the car. In that scene, the driver mocks and endangers an elderly woman crossing the street by blaring an airhorn and laughing as she startles and nearly falls, stating, "Ever see an old sourpuss fill her pants?" followed by, "Stock horn had no balls, so I rigged it with an airhorn from an 18-wheeler. It's the simple things in life, boys. Don't forget it." This portrayal stands in stark contrast to the moral and respectful themes of Plaintiff's work, instead promoting reckless behavior and disrespect toward elders.

17.     Chapter 5 of Plaintiff's first book in the Surfing Mystery Series is entitled "Grounded." In The Grommets stories, children's misbehavior is met with firm but constructive parental control, emphasizing accountability and guidance rather than violence or neglect. In sharp contrast, the infringing work depicts scenes of brutality, domestic abuse, and moral disregard. In Exhibit 13, a girl is struck by her father following a party at her house. The panel shows him

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

angrily shouting "Freak" before hitting her in the face, while the narrator states, "As I'm skating off, I see him full fist clock her." This scene graphically portrays domestic violence and stands in direct opposition to the values of discipline and mutual respect consistently reflected in Plaintiff's work.

18.    Similarly, in Exhibit 14, the infringing story further glorifies delinquent behavior, showing those boys spray painting graffiti on a van while laughing. One character boasts, "Ha! I guess I'm going to hell. A bunch," as another panics, exclaiming, "Oh, shit—my mom!" The following panels depict the mother driving by, clearly recognizing her son among the perpetrators, her eyes wide in shock, but she drives away without intervening. This depiction conveys moral apathy and the normalization of vandalism, again in direct contrast to Plaintiff's work, where adult figures consistently reinforce principles of responsibility, integrity, and respect for others. These depictions from the infringing work reflect a deliberate departure from the wholesome moral framework, positive mentorship, and redemptive themes embodied in Plaintiff's Surfing Mystery Series. Whereas Plaintiff's stories promote respect for elders, responsible conduct, and lessons learned through accountability, the infringing material substitutes these values with scenes of violence, delinquency, and disregard for parental authority. The inclusion of domestic abuse, vulgar language, and criminal mischief not only distorts the tone and intent of the original creative work but also undermines its fundamental purpose of presenting young surfers as disciplined, thoughtful, and morally grounded individuals who learn through courage, empathy, and integrity. As a result, the infringing work conveys the opposite message of what Plaintiff's series was designed to inspire in its readers.

19.    Plaintiff's second book, The Grommets: Big Island Justice, (Exhibit 15) was published in 2013 (Exhibit 16) and expressly marketed as part of the Surfing Mystery Series. In this installment, a long-anticipated dream trip to Hawaii becomes a nightmare for Buzz when his

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

new friend, Keemo, is arrested for allegedly stealing a diamond ring. Keemo, a boy on the autism spectrum, becomes the prime suspect after he experiences an intense emotional reaction during the incident, his behavior is misinterpreted by law enforcement as evidence of guilt. Following Keemo's arrest, Buzz feels isolated and powerless, struggling to reconcile his loyalty to his friend with his family's concern about becoming entangled in the investigation. His sense of alienation begins to ease when he befriends two local girls, Alika and Keemo's tomboy cousin, Leilani. Together, the friends visit an abandoned property where they spend time skating in a pool wearing helmets (Exhibit 17) as they search for clues while gaining mutual respect and growing bonds of friendship. Through their efforts to uncover the truth and clear Keemo's name, after a trial (Exhibit 18). In the process of solving the mystery, Buzz gains a deeper understanding of friendship, acceptance, and cultural identity, while learning the true meaning of ohana, the Hawaiian concept of family, unity, and mutual responsibility.

20.    Plaintiff is currently completing the third installment in the series, entitled "The Grommets: *Toxic Tides*," which is scheduled for publication in 2026. A rough draft of the manuscript containing the first nine chapters of that work is attached hereto as Exhibit 19. As with the prior two books in the Surfing Mystery Series, the introduction is narrated by the main character Buzz as an adult, reflecting retrospectively on formative experiences from his youth. In *Toxic Tides*, Detective Kartner, who is first introduced in the inaugural Grommets story, returns when the boys uncover evidence that industrial polluters are illegally discharging toxic chemicals into the storm drain system which leads to the ocean, resulting in massive fish die-offs and repeated beach closures. In keeping with the moral consistency of the series, the boys demonstrate respect for the law, cooperation with authorities, and a clear understanding that environmental stewardship and civic responsibility are integral to their code as surfers and as young citizens.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

21.     The respect for law and order shown in Plaintiff's Surfing Mystery Series  is conspicuously absent from the infringing work. In stark contrast to The Grommets' portrayal of constructive engagement with law enforcement, the infringing material depicts open hostility and contempt for authority. In Exhibit 20, a character in the infringing comic is shown verbally and physically confronting police officers, shouting "FUCK YOU, PIGS!" while raising both middle fingers, before being slammed against a wall and arrested. In the surrounding dialogue, the officers refer to him as an "instigator," underscoring his role as a provocateur rather than a youth seeking redemption or understanding. This scene glorifies aggression, defiance, and vulgarity, portraying law enforcement as antagonists rather than protectors. Such conduct is diametrically opposed to the moral foundation of Plaintiff's Grommets series, where accountability, cooperation, and ethical growth define the characters' journeys.

22.     Plaintiff intended to provide readers of The Grommets series with an uplifting and positive environment free from the "Three D's" (death, drugs, and divorce.) The stories were carefully written to reflect healthy family dynamics, respect for authority, and personal growth through teamwork, friendship, and moral choice. By contrast, the infringing work presents a bleak and disturbing portrayal of youth culture, replete with negative influences, explicit substance abuse, and adult immorality. The young characters in the infringing material are depicted as victims of broken homes, their lives shaped by the trauma of parental divorce and domestic instability.

23.     In Exhibit 21, the infringing work shows underage characters engaging in drinking and partying behavior, depicting intoxication as humorous and socially rewarding rather than dangerous or unlawful. Exhibit 22 further depicts the same group smoking marijuana from a water pipe, while Exhibit 23 explicitly instructs readers how to fashion a makeshift pipe out of a soda can, trivializing illegal drug use and turning substance abuse into a form of adolescent rebellion.

9

24.    The infringing material also normalizes and glorifies extreme violence. Exhibit 24 depicts scenes of gun violence, while Exhibit 25 portrays brutal physical assaults among minors, rendered in exaggerated and sensationalized imagery. In Exhibit 26, the story escalates to arson of a residence, with flames consuming a structure as the perpetrators watch with apparent pride. Collectively, these scenes convey messages of lawlessness and moral decay, the antithesis of the values Plaintiff's works seek to instill in young readers.

25.    Where Plaintiff's Grommets books emphasize education, perseverance, and curiosity as the path to growth, the infringing work instead celebrates disengagement from those ideals. Exhibit 27 of the offending work illustrates this distortion clearly, depicting the main characters skipping school, behavior the comic presents as exciting and admirable. In one panel, a character laughs while smoking a cigarette and says that he is there to "save you from losing a day of your youths to this institutional learning facilty." The glorification of truancy and defiance of education directly undermines Plaintiff's core message encouraging youth to read, learn, and aspire toward positive achievement.

26.    The infringement further exposes readers to adult sexual content entirely inappropriate for the series' intended audience when a character asks: "You here to fuck my grandpa?" (Exhibit 28.) Then on the same page showing the two older characters leaving for a rendezvous at a motel room together, the dialogue and imagery leaving little doubt as to their sexual intentions. This scene, presented without moral consequence or context, sexualizes adult conduct and is wholly inconsistent with the tone, message, and audience of Plaintiff's Grommets series.

27.    Finally, Plaintiff's young characters consistently demonstrate caution and responsibility, such as wearing helmets during their skateboarding scenes. In contrast, the infringing work glorifies recklessness and the disregard for safety. Exhibits 29 and 30, depict a

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

character suffering severe head injuries after skating without protective gear, his friends' reactions framed as admiration for his "fearless" attitude rather than concern for his wellbeing. The sequence encourages dangerous conduct and trivializes the real-life consequences of such behavior.

28.     Plaintiff first became aware of the infringing work after its widespread circulation online and in print. Upon review, Plaintiff immediately recognized substantial similarities between the infringing material and his Grommets series, including the use of nearly identical character archetypes, skateboarding motifs, and the central concept of a group of adolescents bound by friendship and adventure. However, rather than promoting the values of courage, respect, and integrity central to The Grommets stories, the infringing work distorts those elements into a coarse and profane parody that glorifies violence, drug use, and sexual misconduct. The result is a work that misappropriates Plaintiff's creative framework while stripping it of its positive moral foundation, thereby misleading readers and damaging the reputation and goodwill associated with Plaintiff's original literary property. Plaintiff has invested decades developing The Grommets series as an educational and inspirational work for young audiences, and the release and distribution of the infringing material has caused and continues to cause significant harm to Plaintiff's creative enterprise, professional reputation, and the integrity of The Grommets brand.

29.     THE GROMMETS mark achieved incontestable status under 15 U.S.C. § 1065 in 2014, confirming its validity and enforceability. (Please see Exhibit 37.) The continuous publication and development of works in the series rebuts any presumption of abandonment and demonstrates bona fide and continuous use.

30.     Despite having constructive notice of Plaintiff's Registration on the easily searchable Trademark Office database, Defendants began publishing their infringing comic series 'Grommets' in May of 2024, (Exhibit F of Exhibit 2, herein; & Exhibit 31) seventeen years after Plaintiff's first use. Their series directly competes with Plaintiff's works and is sold through the

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

same channels, including Amazon and Barnes & Noble. Defendants' use of the identical word mark is not only likely to confuse consumers but has created actual consumer confusion, misleads the public, creates a misimpression of affiliation or consent, and damages Plaintiff's goodwill.

31.    Plaintiff promptly acted upon discovering the infringement, sending notice of violation of Plaintiff's rights in The Grommets trademark and a cease-and-desist in July 2025. A copy of the  cease-and-desist letter is attached as Exhibit 32. The timing, which coincided with Comic-Con in San Diego, was appropriate given the heightened visibility and commercial activity of Defendants at the event. A copy of the cover of the events guide and Exhibitor list proving that defendant Image Comics is doing business in San Diego and actively marketing its products here. (Please see Exhibit B of Exhibit 2, attached hereto; & Exhibit 33.) Defendant Image Comics is California Corporation (Exhibit 34), and the remaining Defendants are informed and believed to be California Residents, and the infringing work is set in California.

32.    Despite having received explicit notice of infringement and a demand to stop, Defendants have continued to refuse to cease and escalated matters by filing a declaratory action in Washington based on a false claim of contractual privity. Defendants' continuation of their infringing acts even after notice establishes bad faith, fraud, and willful infringement.

33.    Defendants' conduct also constitutes unfair competition under California law. Image Comics is a California corporation, maintains its registered agent in Costa Mesa, and actively markets in this state, including exhibition at Comic-Con 2025. A copy of the Comic-Con 2025 brochure showing Image Comics' presence and activities within this judicial district is attached as Exhibit B of Exhibit 2, attached hereto; and Exhibit 33. Their decision to file in Washington State, despite their substantial California ties, constitutes unfair and fraudulent business practices.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

34.     Defendants' coordinated conduct constitutes a deliberate conspiracy to dilute Plaintiff's trademark and clear a path for widespread industry misuse of the "Grommets" mark.

**FIRST CAUSE OF ACTION**
(Federal Trademark Infringement, 15 U.S.C. § 1114)
(Against All Defendants)

35.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

36.     Plaintiff owns a valid, enforceable, and incontestable federal trademark registration for THE GROMMETS, U.S. Reg. No. 3,510,923, first used in commerce in 2007 and registered in 2008. The Grommets mark has been continuously used in connection with Plaintiff's Surfing Mystery Series, which promotes positive youth values, surfing culture, and moral development through stories such as The Grommets: The Secret of Turtle Cave (Exhibits 5–11), The Grommets: Big Island Justice (Exhibits 15–18), and the forthcoming The Grommets: Toxic Tides (Exhibit 19). These works consistently depict themes of respect for elders, cooperation with law enforcement, environmental stewardship, and moral integrity.

37.     Defendants, with full knowledge of Plaintiff's rights, have willfully infringed upon this mark by publishing and marketing a comic book series under the title containing the identical name "Grommets," seventeen years after Plaintiff's first use (Exhibit F of Exhibit 2, herein; & Exhibit 31.) Defendants' infringing publication contains identical thematic elements, including young action sports adventures, and depictions of adolescence clearly derived from Plaintiff's creative works, but presented in a manner antithetical to the Plaintiff's wholesome themes.

38.     In sharp contrast to Plaintiff's moral storytelling, Defendants' infringing work contains explicit profanity, violence, drug use, and sexual content. For instance, the infringing comic depicts (1) abuse of the elderly (Exhibit 12), (2) domestic violence against a female minor

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

(Exhibit 13), (3) graffiti and vandalism glorified as humor (Exhibit 14), (4) open defiance of law enforcement (Exhibit 20), (5) underage drinking (Exhibit 21), (6) drug use and instructions for constructing paraphernalia (Exhibits 22–23), (7) gun violence, physical brutality and arson (Exhibits 24–26), (8) glorification of truancy (Exhibit 27), (9) sexual activity among adults in a motel (Exhibit 28), and (10) serious head injuries resulting from failure to use safety equipment (Exhibits 29–30.)

39.    These depictions directly undermine and tarnish Plaintiff's mark, which has always stood for integrity, safety, and positive youth role models. Defendants' continued publication and distribution of the infringing work have caused consumer confusion, leading the public to falsely believe that Plaintiff endorses or is affiliated with Defendants' morally objectionable content. Defendants' use has irreparably harmed Plaintiff's goodwill and reputation.

40.    Defendants' actions constitute willful trademark infringement in violation of 15 U.S.C. § 1114, entitling Plaintiff to injunctive relief, an accounting and disgorgement of Defendants' profits, recovery of Plaintiff's actual damages, and enhanced damages, together with costs and attorneys' fees as authorized by 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION
(False Designation of Origin, 15 U.S.C. § 1125(a))
(Against All Defendants)

41.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

42.    Defendants' use of the title "Grommets" in connection with their adult-themed comic book constitutes a false designation of origin and is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Defendants' work, in violation of 15 U.S.C. § 1125(a). Defendants' comic book deliberately appropriates distinctive narrative

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

elements associated with Plaintiff's Grommets series, such as adolescent surfer protagonists, oceanic settings, and themes of friendship and identity, while distorting these elements through depictions of drug use, violence, and immorality, thereby tarnishing Plaintiff's mark and misleading consumers regarding the nature and origin of the work.

43.     As shown in Exhibits 5 through 11, 15 through 18, and 19, Plaintiff's original works present morally upright adventures such as the rescue of an elderly swimmer and the discovery of a hidden treasure, reinforcing respect and compassion. By contrast, Exhibit 12 from the infringing work shows an adult endangering an elderly woman while mocking her with vulgar remarks. Similarly, Exhibits 13–14 depict domestic abuse and vandalism; Exhibit 20 shows a profane youth screaming "FUCK you, pigs!" at police officers; and Exhibits 21–23 glorify underage drinking and drug use.

44.     These depictions are diametrically opposed to the values expressed in Plaintiff's Grommets series and have misled consumers into believing that the infringing comic represents an "edgy" reboot or authorized continuation of Plaintiff's literary works. Defendants' distribution of the infringing series through identical channels, including Amazon and Barnes & Noble, which further compounds the likelihood of confusion.

45.     The false association between Plaintiff's positive educational brand and Defendants' offensive material causes consumers to mistakenly attribute the infringing content to Plaintiff, thereby damaging his reputation, goodwill, and commercial prospects. Defendants' conduct was deliberate, malicious, and intended to trade on the recognition and success of Plaintiff's established mark.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer substantial harm, including loss of goodwill and damage to reputation,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   and is entitled to injunctive relief, an accounting and disgorgement of Defendants' profits,

2   compensatory damages, and enhanced or treble damages as permitted under 15 U.S.C. § 1117(a).

**THIRD CAUSE OF ACTION**
(California Unfair Competition, Bus. & Prof. Code § 17200)
(Against All Defendants)

47.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

48.    Defendants' conduct constitutes unlawful, unfair, and fraudulent business practices under California Business and Professions Code § 17200. The acts alleged above including willful trademark infringement, false designation of origin, and forum manipulation violate both federal and state law.

49.    Defendants have profited from the deliberate exploitation of Plaintiff's goodwill by marketing and distributing the infringing "Grommets" comic, which incorporates immoral and violent imagery that tarnishes Plaintiff's long-standing reputation. The infringing content depicts underage substance abuse (Exhibits 21–23), domestic violence (Exhibit 13), sexual conduct (Exhibit 29), defiance of authority (Exhibit 20), and physical injury resulting from unsafe behavior (Exhibits 29–30), all of which stand in stark contrast to Plaintiff's educational, family-friendly works promoting reading, responsibility, and environmental awareness (Exhibits 5 through 11, 15 through 18, and 19.)

50.    Defendants' continued use of Plaintiff's mark despite actual notice (Exhibit 32), and their subsequent filing of a declaratory action in an unrelated jurisdiction to evade liability, constitute bad faith, deception, and unfair competition. Such acts have diverted consumers, confused the marketplace, and diminished the value of Plaintiff's trademark and creative works.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

51.    Plaintiff seeks restitution, injunctive relief, and all other remedies authorized under California Business and Professions Code § 17203, including disgorgement of profits and attorney's fees, to prevent Defendants from continuing their unlawful, unfair, and fraudulent acts.

**FOURTH CAUSE OF ACTION**
(Common Law Trademark Infringement and Unfair Competition)
(Against All Defendants)

52.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

53.    Plaintiff has established longstanding and continuous use of THE GROMMETS mark under California common law since 2007, in connection with a series of literary works including The Grommets: The Secret of Turtle Cave (Exhibits 6–11), The Grommets: Big Island Justice (Exhibits 15–17), and the forthcoming The Grommets: Toxic Tides (Exhibit 18). These works embody wholesome and educational themes designed to encourage literacy, promote positive values, and celebrate surfing, friendship, and responsibility. Plaintiff's mark has developed substantial goodwill and secondary meaning in the marketplace.

54.    Defendants' publication of a comic book series under the identical title "Grommets" constitutes common law trademark infringement and unfair competition. Their infringing work, unlike Plaintiff's uplifting series, contains explicit depictions of drug use (Exhibits 21–23), gun violence, physical brutality and arson (Exhibits 24–26), truancy (Exhibit 27), sexual activity between adults (Exhibit 28), and reckless behavior resulting in severe injury (Exhibits 29-30.) It further includes scenes of elder abuse (Exhibit 12), domestic violence (Exhibit 13), and hostility toward law enforcement (Exhibit 20.) These depictions directly contradict the moral foundation of Plaintiff's works, which consistently promote respect for others, adherence to the law, and personal integrity.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

55.    Defendants' knowing use of the identical mark in connection with a product so fundamentally inconsistent with Plaintiff's reputation and values has created confusion, misled consumers, and diverted readers, distributors, and potential publishers. Members of the public have been led to believe that Defendants' offensive content is associated with or endorsed by Plaintiff, thereby damaging Plaintiff's professional standing and the goodwill of the Grommets brand.

56.    Defendants' acts were intentional, willful, and malicious. Their continued use of the mark after receiving formal notice (Exhibit 32) constitutes deliberate infringement and bad faith. Plaintiff has suffered and continues to suffer irreparable harm to his reputation, goodwill, and commercial interests as a result of Defendants' misconduct.

57.    Plaintiff is entitled to injunctive relief, compensatory damages, and punitive damages under California common law to deter Defendants and others from engaging in similar acts of infringement and unfair competition.

## FIFTH CAUSE OF ACTION
(Abuse of Process)
(Against All Defendants)

58.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

59.    Defendants, having been duly notified of their infringement through Plaintiff's cease-and-desist correspondence dated July 11, 2025 (Exhibit 38), and the detailed demand letter dated August 22, 2025, deliberately engaged in improper litigation tactics by filing a declaratory judgment action in the Western District of Washington, a forum with no connection to the parties or dispute.

60.    The purpose of this filing was not to seek legitimate judicial relief but to harass, burden, and intimidate Plaintiff, a California resident whose works, trademark, and commercial

18

activities are all based within this state. The Washington action was premised on knowingly false allegations of contractual privity through Amazon, designed to fabricate jurisdiction and obstruct Plaintiff's lawful enforcement of his rights in his home forum.

61.     This abuse of process occurred within the broader context of Defendants' willful infringement. Having published and distributed their infringing "Grommets" comic, which includes explicit and offensive depictions such as elder abuse (Exhibit 12), domestic violence (Exhibit 13), open hostility toward police (Exhibit 20), underage substance abuse (Exhibits 21–23), and sexual content (Exhibit 28), Defendants sought to shield their misconduct by initiating a bad-faith proceeding in an improper venue.

62.     Plaintiff was compelled to incur significant time, effort, and expense in responding to this wrongful filing, including preparing declarations and motions to dismiss, all while Defendants continued their unlawful distribution of the infringing work. Such conduct constitutes a clear perversion of legal process for an ulterior motive which is to delay justice, exhaust Plaintiff's resources, and chill his enforcement efforts.

63.     As a direct and proximate result of Defendants' abuse of process, Plaintiff has suffered damages including increased legal costs, delay in protecting his rights, and reputational harm. Plaintiff is entitled to compensatory and punitive damages for Defendants' intentional misuse of judicial proceedings.

**SIXTH CAUSE OF ACTION**
(Fraud – Intentional Misrepresentation and Concealment)
(Against All Defendants)

64.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

65.     Beginning in or around May 2024 and continuing thereafter, Defendants intentionally and knowingly made false statements and concealed material facts for the purpose of

deceiving Plaintiff, the public, and commercial distributors. Defendants falsely represented that their comic series titled "Grommets" was an original work of their own creation, wholly unrelated to Plaintiff's long-established Grommets literary series and federally registered trademark, U.S. Reg. No. 3,510,923 (Exhibit 3). Defendants knew at the time of publication that Plaintiff's mark had been in continuous use since 2007 and was incontestable under 15 U.S.C. § 1065, yet they willfully concealed that fact from their publishers, distributors, and the consuming public to falsely present their infringing comic as a new, independent property.

66.    Defendants further misrepresented to Amazon, Barnes & Noble, and other distributors that they owned the rights to The Grommets title, thereby causing the infringing publication to be listed, sold, and marketed under a false claim of originality. After receiving Plaintiff's cease-and-desist correspondence dated July 11, 2025, and his detailed demand letter dated August 20, 2025, Defendants exacerbated their misconduct by filing a declaratory judgment action in the Western District of Washington, falsely asserting jurisdictional "privity" with Amazon and misrepresenting Plaintiff's rights and residency. These statements were knowingly false, designed to delay enforcement, exhaust Plaintiff's resources, and lend legitimacy to their infringement.

67.    Defendants' fraudulent representations were part of a larger scheme to appropriate the goodwill, cultural relevance, and commercial potential of Plaintiff's Grommets brand for their own economic gain. Upon information and belief, Defendants intended to exploit The Grommets name not only for their comic book but also for potential film, television, apparel, and merchandise deals capitalizing on the mainstream popularity of surfing and skate culture. By misappropriating Plaintiff's mark, Defendants sought to position their adult-oriented and morally coarse works as commercially "authentic" expressions of youth culture, thereby diverting market share and investor interest from Plaintiff's legitimate creative enterprise.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

68.     This fraudulent scheme was further advanced through Defendants' use of public endorsements to create the illusion of legitimacy and artistic value. On the back cover of the infringing work, Defendants prominently displayed a flattering quote from professional skateboarder Tony Hawk, one of the most influential figures in modern skateboarding, praising the comic for its "rare authenticity" and its ability to "capture the raw feeling of being an outcast kid in the 1980s." (Please see Exhibit 35.) The endorsement misleads readers and retailers into believing that the infringing comic reflects genuine surf and skate culture, thereby concealing its exploitative and indecent content. As shown in Exhibit 36, Tony Hawk's immense cultural and economic influence is undeniable. Which is just one example, his "900" skateboard recently sold for $1.15 million at auction, setting a record for skateboarding memorabilia. Defendants deliberately leveraged this endorsement to lend their infringing comic credibility within surf and skate subcultures and to attract lucrative licensing and merchandising opportunities and potential video, TV series or motion pictures misappropriating Plaintiff's Trademark "The Grommets."

69.     Defendants' representations were false, and they knew them to be false when made. Defendants acted with intent to induce reliance by Plaintiff, distributors, and the consuming public, to purchase, promote, and distribute the infringing work under the mistaken belief that it was lawfully produced or associated with Plaintiff's Grommets series. Plaintiff reasonably relied upon Defendants' omissions and misrepresentations to his detriment. Defendants' public statements, marketing practices, and fraudulent court filings delayed Plaintiff's ability to enforce his rights and caused confusion in the marketplace regarding the ownership and authenticity of The Grommets brand.

70.     As a direct and proximate result of Defendants' intentional misrepresentations and concealment, Plaintiff has suffered severe reputational harm, economic loss, and emotional distress. Plaintiff's literary works which were created to promote moral integrity, community, and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

literacy among youth, have been falsely associated with Defendants' adult-themed, profane, and violent publication. Defendants acted with malice, oppression, and fraud, deliberately attempting to appropriate Plaintiff's intellectual property for their own profit and to exploit the rising commercial appeal of surfing and skateboarding culture. Plaintiff is entitled to compensatory and punitive damages, together with interest, costs, and such other relief as the Court deems just and proper.

71.    After receiving Plaintiff's cease-and-desist letter dated July 11, 2025, and Plaintiff's formal 30-day demand letter dated August 22, 2025, Defendants compounded their misconduct by filing a declaratory judgment action in the Western District of Washington. In that filing, Defendants knowingly and falsely asserted that they had contractual privity with Amazon and falsely implied that Plaintiff had consented to the use of his mark or waived his rights, all for the purpose of manipulating venue and obstructing Plaintiff's lawful enforcement of his intellectual property rights. Defendants made these misrepresentations with full knowledge that Plaintiff was a California resident with no ties to Washington and that all acts of creation, publication, and infringement occurred in California.

72.    Defendants made these false representations and omissions with actual knowledge of their falsity and with the intent to deceive the public, and retail distributors. Their purpose was to induce online retailers and consumers to purchase and distribute the infringing comic under the mistaken belief that it was an authorized or affiliated continuation of Plaintiff's Grommets series. Defendants also intended to mislead the court into dismissing or delaying Plaintiff's enforcement efforts by concealing their bad faith and falsely manufacturing jurisdictional facts.

73.    As a direct and proximate result of Defendants' intentional misrepresentations and concealment, Plaintiff has sustained damages including, but not limited to, harm to his professional reputation and goodwill, loss of sales, publishing, video and motion picture opportunities, confusion among readers and distributors, and significant financial costs incurred in responding to

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Defendants' fraudulent litigation tactics. The contrast between Plaintiff's moral and educational Grommets stories (Exhibits 6–18) and Defendants' adult-themed, profane, and violent work (Exhibits 12–29) has further damaged Plaintiff's reputation, deceived consumers, and diminished the integrity of his brand.

74.    Defendants' fraudulent conduct was carried out maliciously, oppressively, and with conscious disregard for Plaintiff's rights. Defendants deliberately concealed material facts and made false statements in order to profit from Plaintiff's reputation and mislead the public. Their acts constitute fraud within the meaning of California law, entitling Plaintiff to compensatory damages, punitive damages, attorney's fees, and any other relief deemed just and proper by this Court.

## SEVENTH CAUSE OF ACTION
### (Injunctive Relief)
### (Against All Defendants)

75.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

76.    Plaintiff seeks preliminary and permanent injunctive relief to prevent further infringement, dilution, and misappropriation of his Grommets trademark and creative works. Defendants' continued publication and distribution of the infringing "Grommets" comic, which contains offensive and dangerous content, poses an ongoing and irreparable threat to Plaintiff's brand and the goodwill associated with his mark.

77.    Plaintiff's works, which include The Secret of Turtle Cave, Big Island Justice, and Toxic Tides, are intended to promote educational, moral, and safety-conscious themes, encouraging young readers to act responsibly and respect the rule of law. Defendants' infringing works, however, feature explicit scenes of drug use, gun violence and arson, defiance of law enforcement, sexual activity, and reckless disregard for safety. These depictions fundamentally

tarnish The Grommets name and mislead consumers into believing Plaintiff is associated with such harmful material.

78.     Monetary relief alone cannot remedy the loss of goodwill and the dilution of Plaintiff's brand identity caused by Defendants' actions. The infringing comic's distribution through nationwide channels including Amazon, Barnes & Noble, and major conventions such as Comic-Con (Exhibit 30) which will cause continued and irreparable harm absent judicial intervention.

79.     Accordingly, Plaintiff requests that this Court issue a preliminary and permanent injunction enjoining Defendants, their agents, employees, successors, and assigns from:

1)     Using the name "Grommets" or any confusingly similar mark in connection with the marketing, sale, or distribution of comic books, graphic novels, or related media including video and motion pictures;

2)     Promoting or displaying infringing materials in California or elsewhere;

3)     Continuing to publish, distribute, or profit from the infringing comic series; and

4)     Filing or maintaining any further litigation in bad faith to evade the jurisdiction of this Court.

80.     Plaintiff further seeks an order directing Defendants to recall and destroy all infringing materials bearing The Grommets mark, including digital and physical copies, and to publicly correct false associations created by their infringing publication. Without such injunctive relief, Defendants' ongoing conduct will continue to dilute Plaintiff's mark, cause consumer confusion, and inflict irreparable harm on the integrity of The Grommets brand.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment as follows:

1.  Preliminary and permanent injunctions restraining Defendants' infringing activities;

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

2. An accounting and disgorgement of profits;

3. Plaintiff's actual damages, trebled under 15 U.S.C. § 1117(b);

4. Restitution under California law;

5. Punitive damages on state tort claims;

6. Attorney's fees and costs;

7. Prejudgment and post-judgment interest;

8. Such other relief as the Court deems just and proper.

Dated: October 13, 2025                    Respectfully submitted,

*/s/ Mark-Robert Bluemel*

_____
Mark-Robert Bluemel
Plaintiff, In Pro Per


## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Dated: October 13, 2025                    Respectfully submitted,

*/s/ Mark-Robert Bluemel*

_____
Mark-Robert Bluemel
Plaintiff, In Pro Per

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Exhibit Table/Index

| Exhibit | Pages |
|---|---|
| 1 – October 2, 2025, Letter Regarding Jurisdiction in Washington State | 27 - 29 |
| 2 – Declaration of Mark-Robert Bluemel in Support of 12(b)(2)  WA | 30 - 49 |
| 3 – "The Grommets" US Trademark Registration Dated Oct. 7, 2008 | 50 - 51 |
| 4 – About the Author Mark-Robert Bluemel for "Series" | 52 - 53 |
| 5 – Book One Cover for The Grommets: "The Secret of Turtle Cave" | 54 – 55 |
| 6 – The Grommets – Illustration of Main Characters from Book One | 56 - 57 |
| 7 - The Grommets – Illustration of Character Snorkeling from Book One | 58 - 59 |
| 8 - The Grommets – Illustration of Mysterious Etching from Book One | 60 - 61 |
| 9 - The Grommets – Illustration of  Turtle Cave from Book One | 62 - 63 |
| 10 - The Grommets – Illustration of Skeleton in Cave from Book One | 64 - 65 |
| 11 - The Grommets – Illustration of Nana giving Key from Book One | 66 - 67 |
| 12 – Page from Infringing Work Showing Elder Abuse | 68 – 69 |
| 13 - Page from Infringing Work Showing Domestic Violence | 70 -71 |
| 14 - Page from Infringing Work Showing Vandalism & Bad Parenting | 73 - 74 |
| 15 - Book Two Cover for The Grommets: "Big Island Justice" | 75 -76 |
| 16 - Book Two Inside Cover Showing 2013 Year of Publication | 77 - 78 |
| 17 - The Grommets – Illustration of Skateboarding Pool from Book Two | 79 - 80 |
| 18 - The Grommets – Illustration of Courtroom Scene from Book Two | 81 - 82 |
| 19 - Book Three Preliminary Draft Ch. 1-9 The Grommets: "Toxic Tides" | 83 - 183 |
| 20 - Page from Infringing Work Showing Disrespect of Police Authority | 184 - 185 |
| 21 - Page from Infringing Work Showing Alcohol Abuse by Minors | 186 - 187 |
| 22 - Page from Infringing Work Showing Drug Use by Minors | 188 - 189 |
| 23 - Page from Infringing Work Showing How to Make Pipe w/ Soda Can | 190 - 191 |
| 24 - Page from Infringing Work Showing Gun Violence | 192 - 193 |
| 25 - Page from Infringing Work Showing Brutal Physical Violence | 194 - 195 |
| 26 - Page from Infringing Work Showing Arson of Residence | 196 - 197 |
| 27 - Page from Infringing Work Promoting Truancy | 198 - 199 |
| 28 - Page from Infringing Work Showing Sexual Content | 200 - 201 |
| 29 - Page from Infringing Work  Glorifying Unsafe Behavior | 202 - 203 |
| 30 - Page from Infringing Work  Glorifying Unsafe Behavior | 204 - 205 |
| 31 - Covers of Infringing Work | 206 - 207 |
| 32 – July 24, 2025, Letter Regarding the Defendants' TM Infringement | 208 - 210 |
| 33 – Comic-Con Events Guide with Image Comics Exhibitor Booth Listed | 211 - 213 |
| 34 – Image Comics Inc. CA SOS Statement of Information & Art. Of Inc. | 214 - 218 |
| 35 – Back Cover Infringing Work with Review by Tony Hawk | 219 - 220 |
| 36 – Article Regarding Tonay Hawk Selling Skateboard for $1.15 million | 221 - 224 |
| 37 – October 7, 2014, Notice Of Acceptance of The Grommets TM | 225 - 226 |
| 38 - July 11, 2025, Cease and Desist Letter to Defendants | 227 - 230 |
| 39 – August 22, 2025, B&P § 17200 et seq. Notice Letter to Defendants | 231 - 234 |